DECISION
{¶ 1} Relator, Amanda Sampson, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order terminating R.C. 4123.56(B) wage loss compensation from *Page 2 
February 27, 2004 through June 20, 2005, and to enter an amended order reinstating wage loss compensation for said closed period.
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate found that the doctrine of laches barred the employer from retroactively seeking the termination of R.C. 4123.56(B) wage loss compensation for the period in question. The magistrate determined that the employer's 440-day delay in filing its motion to terminate said compensation was unreasonable and that relator was prejudiced by the delay. Therefore, the magistrate has recommended that this court grant relator's request for a writ of mandamus.
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} Finding no error or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is granted.
Writ of mandamus granted.
 BROWN and FRENCH, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 5} In this original action, relator, Amanda Sampson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that R.C. 4123.56(B) wage loss compensation was terminated *Page 4 
effective February 27, 2004, and to enter an amended order reinstating wage loss compensation for the closed period February 27, 2004 through June 20, 2005.
Findings of Fact:
 {¶ 6} 1. On May 22, 2000, relator sustained an industrial injury while employed as a plater for respondent Ilsco Coropration ("Ilsco"), a self-insured employer under Ohio's workers' compensation laws. The claim is allowed for "sprain right shoulder upper arm; tear rotator cuff, right," and is assigned claim number 00-819563.
 {¶ 7} 2. On January 9, 2002, relator underwent arthroscopic surgery on her right shoulder. Ilsco began payments of temporary total disability ("TTD") com-pensation.
 {¶ 8} 3. On January 7, 2003, relator's treating physician Robert S. Heidt, Jr., M.D., wrote: "IMPRESSION: I think it is doubtful that she is ever go[ing] back to any job, which involves above horizontal lifting or persistent usage."
 {¶ 9} 4. On April 7, 2003, at Ilsco's request, relator was examined by Steven S. Wunder, M.D., who wrote:
 I believe she has reached maximum medical improvement.
 I do believe that she will have functional restrictions as outlined by Dr. Heidt. She can be doing more lifting at waist height or below but would have difficulty with any activity overhead.
 {¶ 10} 5. Ilsco continued to pay TTD compensation until April 28, 2003, when relator returned to light-duty janitorial work at Ilsco.
 {¶ 11} 6. Ilsco paid R.C. 4123.56(B) wage loss compensation from April 28 through August 8, 2003, while relator worked the light-duty janitorial job.
 {¶ 12} 7. Apparently, Ilsco could not accommodate relator's medical restrictions after August 8, 2003, and thus relator became unemployed. *Page 5 
 {¶ 13} 8. On August 13, 2003, relator completed a C-140 application for wage loss compensation.
 {¶ 14} 9. On August 27, 2003, Dr. Heidt completed the "Medical Report" form found on the backside of the C-140. Dr. Heidt listed permanent restrictions of "no reaching above shoulder[; ] no lifting above shoulder level."
 {¶ 15} 10. The C-140 application and medical report was filed on September 15, 2003.
 {¶ 16} 11. Following a November 21, 2003 hearing, a district hearing officer ("DHO") issued an order granting wage loss compensation beginning August 9, 2003, based upon the April 7, 2003 report of Dr. Wunder and the August 27, 2003 report of Dr. Heidt.
 {¶ 17} 12. Ilsco administratively appealed the DHO's order of November 21, 2003.
 {¶ 18} 13. Following a January 16, 2004 hearing, a staff hearing officer ("SHO") issued an order that affirmed the DHO's order of November 21, 2003. The SHO's order explains:
 The Staff Hearing Officer finds that the injured worker has restrictions which result from the allowed conditions in this claim. The Staff Hearing Officer further finds that as a result of these restrictions, the injured worker has not been able to find employment which is consistent with her physical capabilities. The Staff Hearing Officer further finds that the restrictions that the injured worker has as a result of the allowed conditions include the inability to lift or reach above the height of the shoulder as outlined by Dr. Wunder in his report dated 04/07/2003 and Dr. Heidt in his report dated 08/27/2003.
 The Staff Hearing Officer further finds that the injured worker has registered with the Ohio Bureau of Jobs and Family Services. The Staff Hearing Officer further finds that the injured worker has conducted a good faith job search. *Page 6 
 The injured worker testified at the hearing that she devotes approximately 30 to 35 hours per week to her job search. The injured worker testified that because of a nervous condition she rarely drives and must rely upon public transportation to get to the various [s]ites where she applies for work.
 The Staff Hearing Officer finds that the injured worker has otherwise complied with the Industrial Commission wage loss rules as set forth in Ohio Administrative Code 4125-1-01.
 The Staff Hearing Officer grants the wage loss application filed 09/15/2003 to the extent that wage loss benefits are ordered paid from 08/09/2003 to the present. Payment of wage loss benefits may continue upon submission of appropriate documentation of the injured worker's continued wage loss.
 This order is based upon the reports of Dr. Wunder and Dr. Heidt, the job search logs on file and the testimony of the injured worker at the hearing.
 {¶ 19} 14. On February 7, 2004, another SHO issued an order refusing Ilsco's administrative appeal from the SHO's order of January 16, 2004.
 {¶ 20} 15. Pursuant to the commission's orders, Ilsco made periodic payments of wage loss compensation for the period beginning August 9, 2003.
 {¶ 21} 16. On May 12, 2005, citing relator's failure to file supplemental medical reports, Ilsco moved to terminate the payments of wage loss compensation.
 {¶ 22} 17. On June 21, 2005, relator was examined by Dr. Heidt who wrote:
 Amanda is followed up with her right shoulder and developed increasing soreness in her right shoulder about four to six weeks ago. No real history of recurrent trauma, just involved with activities of daily living. No falls or major trauma.
 Her objective exam today shows tenderness in the subacromial anterolateral space, painful extremes of range of motion, weakness of the rotator cuff. * * * *Page 7 
 {¶ 23} 18. On August 23, 2005, Dr. Heidt completed a "Medical Report" form which instructs:
 This report must be completed by your attending physician and submitted every 90 days if restrictions are temporary or every 180 days if restrictions are permanent.
 {¶ 24} On the "Medical Report" form, Dr. Heidt listed June 21, 2005 as the "[d]ate of last examination." He also indicated that restrictions are "permanent."
 {¶ 25} Dr. Heidt indicated on the form that relator can lift up to five pounds occasionally but she can never lift six pounds or over.
 {¶ 26} 19. Earlier, following an August 9, 2005 hearing, a DHO issued an order that terminated wage loss compensation effective February 27, 2004, on grounds that relator failed to submit a medical report within 180 days of Dr. Heidt's August 27, 2003 medical report.
 {¶ 27} 20. Relator administratively appealed the DHO's order of August 9, 2005.
 {¶ 28} 21. Following a September 9, 2005 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 08/09/2005, is affirmed with additional reasoning. The Staff Hearing Officer grants the C-86 motion filed by the employer on 05/12/2005 to the extent of this order.
 The employer's motion requesting that ongoing non-working wage loss be terminated is granted to the following extent.
 The Staff Hearing Officer terminates ongoing non-working wage loss in this claim effective 02/27/2004 for the reason that the injured worker has failed to comply with Ohio Administrative Code 4125-1-01 (C)(3).
 The Staff Hearing Officer finds the injured worker has not submitted medical restrictions every 180 days as set forth by the above cited rule. The injured worker's medical restrictions from Dr. Heidt dated 08/27/2003 indicated that the *Page 8 
injured worker's medical restrictions are permanent. The Staff Hearing Officer finds that permanent restrictions require that the injured worker submit an updated medical report outlining the injured worker's restrictions every 180 days. The injured worker did not submit another work restriction report until 06/21/2005.
 Therefore, the Staff Hearing Officer terminates ongoing wage loss effective 02/27/2004, which is 180 days after the date of the medical restrictions report submitted on 08/27/2003.
 The Staff Hearing Officer finds that the office note from Dr. Heidt dated 10/26/2004 does not constitute a medical report as contemplated in Ohio Administrative Code 4125-1-01 because this office note does not set forth the injured worker's specific medical restrictions. The Staff Hearing Officer further finds that the medical report by Dr. Heidt dated 08/23/2005 and filed 09/09/2005 is not sufficient documentation to provide the restrictions for a period of time going back to 02/27/2004 to 06/21/2005 as this report is not contemporaneous medical evidence over this period.
 The Staff Hearing Officer further orders non-working wage loss paid beginning 06/21/2005 pursuant to the restrictions submitted by Dr. Heidt dated 06/21/2005 and Ohio Revised Code 4123.56.
 The Staff Hearing Officer finds that the injured worker has engaged in a good faith job search and has been unable to find employment consistent with her physical restrictions for a period beginning 06/21/2005.
 The Staff Hearing Officer further finds that the injured worker has complied with Ohio Administrative Code 4125-1-01 for the period beginning on 06/21/2005.
 Therefore the injured worker is granted non-working wage loss pursuant to Ohio Revised Code 4123.56 for a period beginning 06/21/2005 and to continue upon the injured worker's continued compliance with Ohio Administrative Code 4125-1-01.
 The Staff Hearing Officer finds that non-working wage loss benefits are to be paid pursuant to statute. *Page 9 
 This order is based on Ohio Administrative Code 4125-1-01 and the medical restrictions provided by Dr. Heidt.
 {¶ 29} 22. On October 7, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 9, 2005.
 {¶ 30} 23. On March 1, 2006, relator, Amanda Sampson, filed this mandamus action.
Conclusions of Law:
 {¶ 31} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 32} Ohio Adm. Code 4125-1-01 sets forth the commission's promulgated rules applicable to the adjudication of wage loss applications.
 {¶ 33} Ohio Adm. Code 4125-1-01(C) states in part:
 (C) Applications for compensation for wage losses shall be filed with the bureau of workers' compensation on forms provided by the bureau. * * *
 * * *
 (2) A medical report shall accompany the application. The report shall contain:
 (a) A list of all restrictions;
 (b) An opinion on whether the restrictions are permanent or temporary;
 (c) When the restrictions are temporary, an opinion as to the expected duration of the restrictions;
 (d) The date of the last medical examination;
 (e) The date of the report;
 (f) The name of the physician who authored the report; and
 (g) The physician's signature. *Page 10 
 (3) Supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the bureau of workers' compensation or the self-insured employer in self-insured claims once during every ninety day period after the initial application, if the restrictions are temporary, or once during every one hundred eighty day period after the initial application, if the medical restrictions are permanent. The supplemental report shall comply with paragraph (C)(2) of this rule.
Ohio Adm. Code 4125-1-01(D) states in part:
 The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied. A party who asserts, as a defense to the payment of wage loss compensation, that the claimant has failed to meet his burden of producing evidence regarding his or her entitlement to wage loss compensation is not required to produce evidence to support that assertion. However, any party asserting other defenses to the payment of wage loss compensation, through motion, appeal, or otherwise is solely responsible for and bears the burden of producing evidence to support those defenses. If there is insufficient evidence to support a defense to the payment of wage loss compensation, that defense shall not be used as a grounds to deny such compensation. In no case shall this rule be construed as placing on the industrial commission any burden to produce evidence.
 {¶ 34} Citing Ohio Adm. Code 4125-1-01(C)(3), the commission, through its SHO, retroactively terminated wage loss compensation effective February 27, 2004, which is 180 days following the date of Dr. Heidt's August 27, 2003 report. The commission recommended wage loss compensation effective June 21, 2005, the date of last examination listed on Dr. Heidt's August 23, 2005 medical report that was prompted by the filing of Ilsco's motion to terminate. *Page 11 
 {¶ 35} Presumably, relator has incurred an overpayment of wage loss compensation for the closed period from February 27, 2004 through June 20, 2005, due to the commission's decision to retroactively terminate wage loss compensation.
 {¶ 36} According to relator, the commission's decision to retroactively terminate wage loss compensation went beyond the relief requested by Ilsco's motion which simply requested that wage loss compensation be terminated. Relator thus suggests that it was improper that the commission retroactively terminate compensation.
 {¶ 37} Relator also asserts that Ilsco was estopped from seeking retroactive termination of wage loss compensation because Ilsco unreasonably delayed the filing of its motion to terminate. According to relator, she was entitled to rely upon the periodic payments of wage loss compensation which Ilsco paid without complaint after the 180 days had elapsed.
 {¶ 38} In its brief, Ilsco repeatedly asserts that it moved to terminate compensation after relator failed to provide the supplemental medical reports "for more than 600 days." (Relator's brief at 8, 11 and 12.)
 {¶ 39} In fact, assuming that the 180-day supplemental report was due on February 27, 2004, as the commission determined, Ilsco did delay the filing of its motion to terminate until May 12, 2005, thus allowing 440 days to pass after relator's failure to provide the supplemental medical report.
 {¶ 40} During this 440-day delay, Ilsco made periodic payments of wage loss compensation to relator without complaint. Ilsco has provided no explanation for this.
 {¶ 41} The elements of a laches defense are: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual *Page 12 
or constructive, of the injury or wrong; and (4) prejudice to the other party. State ex rel. Chavis v. Sycamore City School Dist. Bd. ofEduc. (1994), 71 Ohio St.3d 26, 35.
 {¶ 42} All of the elements of laches are present here: (1 ) Ilsco's 440-day delay was unreasonable; (2) Ilsco has no excuse for its delay; (3) Ilsco does not claim that it was unaware of relator's failure to submit the 180-day supplemental medical report; and (4) relator was prejudiced by Ilsco's delay in filing the motion to terminate.
 {¶ 43} Relator was clearly prejudiced because Ilsco's failure to promptly move to terminate compensation allowed relator to continue the failure to obtain the supplemental report.
 {¶ 44} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of September 9, 2005, terminating wage loss compensation effective February 27, 2004, and to enter an amended order that denies Ilsco's May 12, 2005 motion to terminate wage loss compensation. *Page 1